BAXTER *v.* COWHEY.

Appeal and Error—Instructions to Jury—Requests.

> Though the court's charge, in an action by architects for compensation, was not clear or comprehensive, the verdict, which was not against the weight of the evidence, is affirmed, the issue being simple and no requests having been presented by appellant.

Error to Wayne; Donovan, J. Submitted December 11, 1911. (Docket No. 184.) Decided December 29, 1911.

Assumpsit by Frank G. Baxter and another against Thomas F. Cowhey for services rendered. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Henderson, Martindale & Grose*, for appellant.

*William G. Fitzpatrick* (*C. E. Duffy*, of counsel), for appellees.

Ostrander, C. J. Plaintiffs, who are architects, wrote to defendant, for whom they were preparing the plans and specifications for a building, a letter which they claim embodied the result of former conversations and agreements. It is here set out:

.‟February 28, 1908.

‟Mr. Thomas F. Cowhey,
          ‟Detroit, Michigan.
‟*Dear Sir:*
     ‟Verifying our recent conversation with you we are now at work on drawings for your three-story brick veneered apartment building to be built on Bowen avenue, north of Jefferson. We have agreed to make all drawings, details, blue prints, and specifications necessary for this work for $150.00. If contracts are let and we super-

intend same we are to receive $175.00 for complete super-
intendence.

"Yours truly,
"BAXTER & O'DELL.

"$50.00 when drawings are completed, $75.00 on 10th
March, '08, $25.00 when building is plastered.

"B. & O."

The postscript, as explained by plaintiffs, refers to the
payment for the plans, which have been paid for. The
building was erected. Plaintiffs claim that they superin-
tended the construction of the building, and are therefore
entitled to the contract price of $175, and for this sum
they brought their suit. Defendant claims that the letter
did not come to him until some time after the erection of
the building had begun, that plaintiffs were not employed
to superintend, and did not superintend, the construction,
and that for such services as they performed, besides
drawing the plans (which were to be in explanation, etc.,
of them), it was agreed they should be paid the sum of
$25. It is agreed that some services were rendered by
plaintiffs, or by one of them, after construction of the
building was begun. The nature and extent of such
services and the number of times the building was visited
by the architect were testified to by the parties and by
various contractors. It does not appear that either party
presented any requests to charge. There was a verdict
and judgment for plaintiffs for the amount claimed by
them. A motion for a new trial was overruled.

Errors assigned are based upon the charge of the court,
which, it is claimed, did not define, but, on the contrary, ob-
scured, the issue, among other things presenting to the jury
a theory of recovery based upon an implied contract to pay
plaintiffs for services rendered. In a way, the court did
advise the jury of the duty to be performed by them. He
said:

"If you are convinced that the plaintiff here is entitled
to recover, say so by your verdict, and, if not, say by
your verdict. It would be a very simple thing then in

168 MICH.—10.

balloting, plaintiff or defendant. If defendant, come in and tell us, and, if plaintiff, fix the amount. I will not name any arbitrary amount, but the amount named here claimed by the plaintiff is $175. That is the gross amount, and the amount claimed by the defendant is $25."

Later on in the charge appears the following:

"They had a jangle once, and they sent for the architect, and then he is there over 20 times, according to his testimony. He is there from the beginning taking what he claims to be the main part, what the defendants claim only a part. Now, whether their minds ever met upon the contract anywhere would depend upon the reading of the letter. It is not exactly clear, and, even if you read it, it does not give the whole transaction, because it is made, according to its date, back in February—that is, before it had been done—and it uses the language of the last clause like this. 'We have agreed to make all drawings, details, blue prints, and specifications necessary for this work for $150.00.' Up to there, there is not a word against it, there is not a word of dispute. We have agreed upon that amount, if you believe it up to that date. Now, he goes on, 'If contracts are let, and we superintend (all contracts, within the meaning of that paper), then we are to receive $175.00, and we do not hear anything more about that.'"

The language just quoted immediately precedes that which is especially complained about, which is:

"Now in law, if one stands by and sees another build a house for him to his advantage, and for his benefit, and he takes the benefit, why the laws will make the contract that a reasonable sum be paid. Even if they never have any contract at all. That is one way of measuring a contract. The law itself implies a contract. A man need not always make a hard and fast contract. And if you remember the Scotch adage, that the house never costs any less than the builder estimated, you will remember that nearly every house and every building put up has something changed, or altered, or amended, in some form in connection with it. So that it is a usual thing that midway in the building of a house a partition is taken down, and another put in, a dormer window or something. They very rarely continue from the beginning of a job to

the very end of a job without some alterations, and in this case it is for the 12 men to find out if they made a further arrangement. If they did or did not make further arrangement, whereby they could use more of the architect's work than they originally intended, if there was one time that they met, or they said, 'No; I do not want to make any extra bill, I must keep down the bill,' or words to that effect, or that meaning."

Excepting the portion in which the jury was told that plaintiffs had the burden of proof, we have set out all of the charge which has any particular reference to the case which was being tried. It is said by counsel for appellees that what was said does not lack all of the requirements of a charge, which may be true, although it is difficult to understand how it could have in any manner aided the jury. We assume that counsel argued this case, and, in view of the simplicity of the issue, are disposed to affirm the judgment, somewhat influenced in this behalf by the fact that counsel for both parties refrained from suggesting amendments to the charge. We are impressed that the jury understood the point to be determined, and the verdict indicates that they believed the plaintiffs and their witnesses. We think the verdict is not so clearly against the weight of the evidence that we should set it aside.

The judgment is affirmed.

STEERE, MOORE, BROOKE, and STONE, JJ., concurred.